Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| M.D., and J.D.,<br><br>        Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS and BLUE SHIELD,<br><br>        Defendant. | COMPLAINT<br><br>Case No. 1:22-cv-00082 - JCB |

Plaintiffs M.D. and J.D., through their undersigned counsel, complain and allege against Defendant Anthem Blue Cross and Blue Shield ("Anthem") as follows:

## PARTIES, JURISDICTION AND VENUE

1. M.D. and J.D. are natural persons residing in Orange County, Florida. M.D. is J.D.'s father.

2. Anthem is the trade name of Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. Anthem is an independent licensee of the nationwide Blue Cross and Blue Shield association and was the insurer and claims administrator, as well as the fiduciary under

1

ERISA, for the ERISA plan providing coverage for the Plaintiffs ("the Plan") during the treatment at issue in this case.

3. The Plan is a fully insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). M.D. was a participant in the Plan and J.D. was a beneficiary of the Plan at all relevant times. M.D. and J.D. continue to be participants and beneficiaries of the Plan.

4. J.D. received medical care and treatment at Catalyst Residential Treatment Center ("Catalyst"). Catalyst is a licensed residential treatment facility located in Box Elder County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Anthem denied claims for payment of J.D.'s medical expenses in connection with his treatment at Catalyst.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Anthem does business in Utah, and the treatment at issue took place in Utah.

8. In addition, M.D. has been informed and reasonably believes that litigating the case outside Utah will likely lead to substantially increased litigation costs for which he will be responsible to pay, which would not be incurred if venue of the case remains in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Catalyst

10. J.D. was admitted to Catalyst on July 2, 2019, due to a history of drug abuse, threats of self-harm, and threats of physical violence.

11. In a letter dated July 5, 2019, Anthem denied payment for J.D.'s treatment. The letter gave the following justification for the denial:

> A request for payment for Adult Psychiatric Residential Treatment Center has been received and administratively denied. Per the members [sic] benefit plan, Residential Treatment Centers must be licensed and accredited in order to be eligible for coverage under the member's benefit plan. The information provided by CATALYST RTC LLC indicates that the facility is not accredited at the time of this admission. Therefore, the request for coverage of Residential Treatment is denied. The final decision to proceed with the requested service is between the provider and the member. (emphasis in original)

12. On December 16, 2019 M.D. submitted an appeal of the denial of payment for J.D.'s treatment at Catalyst. M.D. reminded Anthem that he was guaranteed certain protections under ERISA including a review which took into account all of the information he provided, which gave the specific reasoning for the determination and identified the specific plan provisions on which it was based, which used an appropriately qualified reviewer and disclosed their identity, and provided him with a full, fair, and thorough evaluation of the denial.

13. M.D. pointed out that Anthem had listed the incorrect dates of service in its initial denial and had yet to correct the error despite several attempts on his part to resolve the issue. He also noted that Anthem had mistakenly described J.D.'s care as "Adult Psychiatric Residential Treatment" when J.D. was not yet an adult and had been diagnosed with a substance use disorder. M.D. voiced his concern that these errors indicated Anthem had not provided him with the full, fair, and thorough review to which he was entitled.

14. M.D. wrote that Catalyst was duly licensed by the State of Utah as a residential treatment center and was acting within the scope of that license. He stated that the Plan was subject to MHPAEA which prohibited insurers from placing restrictions on mental health benefits which were stricter than those applied to analogous medical or surgical benefits. M.D. identified intermediate level medical or surgical services such as skilled nursing, inpatient rehabilitation, and hospice care as some of the medical or surgical analogues to the treatment J.D. received.

15. M.D. wrote that in order for Anthem to require specific accreditation for residential treatment, it would also need to require the same of skilled nursing, hospice, and inpatient rehabilitation services. He quoted the Plan's definition of hospice and pointed out that it had no accreditation requirement at all. M.D. stated that the Plan did not define inpatient rehabilitation and listed no licensure or accreditation requirements for this service.

16. He noted that while skilled nursing facilities were generally required by the Plan to be licensed and accredited, Anthem often waived this requirement and skilled nursing facilities could be "otherwise approved by us" even if they were not licensed or accredited. M.D. pointed out that there was no "otherwise approved by us" exception for residential treatment.

17. M.D. quoted the Plan's definition of a provider and stated that Catalyst met this definition and should have been approved on this basis alone. He reiterated that Catalyst was licensed as a residential treatment facility by the State of Utah and met all of the requirements set forth in Utah code to maintain that licensure. M.D. included a copy of the Utah Administrative Code rules for residential treatment with the appeal.

18. He argued that Anthem was acting in an arbitrary and capricious manner and imposing requirements which were intended primarily to limit the availability of residential treatment and protect Anthem's financial bottom line at the expense of its insureds.

19. M.D. requested to be provided with a copy of all documents under which the Plan was operated so that he could further assess Anthem's MHPAEA compliance.

20. In a letter dated February 13, 2020, Anthem upheld the denial of payment. The letter gave the following justification for the denial:

> Your policy requires that all residential treatment facilities be fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA). After careful review we have determined that Catalyst RTC LLC is not accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA). In your Cardlytics benefit booklet, in the definitions section on page 127 it states:
>
> **Residential Treatment Center / Facility:**
>
> A Provider licensed and operated as required by law, which includes:
>
> 1. Room, board and skilled nursing care (either an RN or LVN/LPN) available on-site at least eight hours daily with 24 hour availability;
>
> 2. A staff with one or more Doctors available at all times.
>
> 3. Residential treatment takes place in a structured facility-based setting.

4. The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.

5. Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.

6. Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA)

The health plan's determination is not a violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) and is not imposing Non-Quantitative Treatment Limitations. We treat residential treatment centers the same as all intermediate levels of care and we are not holding your residential treatment to a stricter standard. All facilities under the plan require that they be accredited, including Skilled Nursing Facilities. On page 121 of your Cardlytics benefit booklet, under the definition of Facility it states:

**Facility**

A facility including but not limited to, a Hospital, freestanding Ambulatory Surgical Facility, Chemical Dependency Treatment Facility, Residential Treatment Center, Skilled Nursing Facility, Home Health Care Agency or mental health facility, as defined in this Booklet. The Facility must be licensed, accredited, registered or approved by the Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable or meet specific rules set by us.

Please note that this request for residential treatment level of care has not been denied due to medical necessity. This case has been administratively denied due to the member's policy requiring that all facilities, including residential treatment centers, be accredited.

Lastly, your father has made a request for copies of all documents under which the plan is operated, the certificate of coverage, criteria and guidelines used for the benefits you are seeking and all reports from physicians. We are happy to provide this information and will be mailed [sic] under a separate cover.

21. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

22. The denial of benefits for J.D.'s treatment was a breach of contract and caused M.D. to incur medical expenses that should have been paid by the Plan in an amount totaling over $225,000.

### FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

23. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

24. Anthem and the Plan failed to provide coverage for J.D.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

25. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

26. Anthem and the agents of the Plan breached their fiduciary duties to J.D. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in J.D.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, and to provide a full and fair review of J.D.'s claims.

//

//

27. The actions of Anthem and the Plan in failing to provide coverage for J.D.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

28. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Anthem's fiduciary duties.

29. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

30. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

31. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

32. The explicit language of the SPD, one of the governing plan documents, states that in order for a service to be medically necessary it must, among other requirements, be "compatible with the standards of acceptable medical practice in the United States."

33. When Anthem and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

34. Anthem and the Plan evaluated J.D.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

35. M.D. asserted that Anthem's accreditation requirements for residential treatment centers were an arbitrary and deliberate attempt to limit payment for residential treatment by imposing requirements which were more restrictive than necessary and stricter than those applied by state regulatory agencies.

36. He wrote that Catalyst met the requirements set forth by the State of Utah to be licensed as a residential treatment facility. M.D. included a copy of these requirements with the appeal. They include a comprehensive list of state mandated items such as having licensed and qualified staff, meeting specific criteria for individuals with disabilities, regulations on the physical environment in which treatment takes place, and even regulations on food services.

37. Among all of its requirements for licensure as a residential treatment facility, the State of Utah does not require accreditation.

38. As evidenced by the State of Utah's willingness to license residential treatment facilities without requiring those facilities to be accredited by agencies such as The Joint Commission or any other accrediting agency, accreditation is not a necessary part of generally accepted standards of medical practice to deliver effective residential treatment.

39. Many residential treatment centers do not seek or hold any accreditation from agencies such as The Joint Commission. Despite this, licensed residential treatment facilities, acting within the scope of their license, are required to provide services in accordance with generally accepted standards of medical practice.

40. M.D. also provided evidence that while Anthem did require accreditation for skilled nursing facilities, it did not appear to require accreditation of other intermediate level medical or surgical services like inpatient rehabilitation facilties and inpatient hospice facilities.

41. The actions of Anthem in providing coverage for non-accredited inpatient rehabilitation facilities and inpatient hospice facilities while excluding coverage for non-accredited residential treatment centers creates a disparity between coverage for residential mental health treatment and "substantially all" medical and surgical services in the same classification.

42. Consequently, even if Anthem requires accreditation for skilled nursing facilities to obtain coverage, it still violates MHPAEA because most types of sub-acute inpatient intermediate level medical or surgical facilities covered by the Plan do not require accreditation.

43. In its final denial letter, Anthem contended that its facilities all needed to be accredited, however, this is a simplification of the language quoted by the reviewer. The definition of a facility as quoted in the denial letter states:

> The Facility must be licensed, accredited, registered or approved by the Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable or meet specific rules set by us.

44. This language not only includes an "as applicable" modifier, but also, as M.D. pointed out, medical and surgical facilities could avoid accreditation so long as they met "specific rules" set by Anthem. M.D. argued that in the case of residential treatment, this exemption was not present and accreditation needed to be obtained without any other options being available to allow for coverage of non-accredited residential facilities.

45. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

46. The violations of MHPAEA by Anthem and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendant violate MHPAEA;

    (b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of MHPAEA.

47. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for J.D.'s medically necessary treatment at Catalyst under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 28th day of June, 2022.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiffs

County of Plaintiffs' Residence:
Orange County, Florida.